47 F.3d 1170
 1995-1 Trade Cases P 70,895
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PARK AVENUE RADIOLOGY ASSOCIATES, P.C.; Dr. Ian F. Murray;
Dr. Daniel Westmoreland, Plaintiffs-Appellants,
v.
METHODIST HEALTH SYSTEMS, INC., a Tennessee corporation;
Health Choice, Inc., a Tennessee corporation; Metrocare,
Inc., a Tennessee corporation; Memphis Radiological
Professional Corporation, a Tennessee corporation;
Methodist Hospitals of Memphis, a Tennessee corporation,
Defendants-Appellees.
 No. 93-6458.
 United States Court of Appeals, Sixth Circuit.
 Jan. 17, 1995.
 
 On Appeal from the United States District Court, for the Western District of Tennessee, No. 92-02881; Odell Horton, Judge.
 W.D.Tenn.
 VACATED AND REMANDED.
 Before: KENNEDY, CONTIE and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs, Dr. Ian Murray, Dr. Daniel Westmoreland and their radiology business, Park Avenue Radiology Associates appeal the summary judgment entered in this antitrust action in favor of defendants Health Choice, Inc. ("Health Choice")[1], Metrocare, Inc. ("Metrocare")[2], Methodist Hospitals of Memphis ("Methodist Hospitals"), its parent corporation Methodist Health Systems, Inc. ("Methodist Health"), and Memphis Radiological Professional Corporation ("Memphis Radiological")[3]. Plaintiffs also appeal the district court's denial of their motion for a continuance to permit further discovery pursuant to Fed.R.Civ.P. 56(f).
 
 
 2
 For the reasons discussed below, we vacate the judgment of the district court, reverse the denial of the Rule 56(f) motion and remand for further proceedings consistent with this opinion.
 
 I.
 
 3
 Plaintiffs perform out-patient diagnostic imaging services for Memphis area patients, and, in the past, had provided services to many patients of Metrocare member physicians. According to plaintiffs, after Metrocare entered into a contract with Health Choice in which they agreed to provide health services for Health Choice participants at a predetermined fee set by Health Choice in its service agreement with third-party payors, those referrals ceased. Plaintiffs contend that many Metrocare referring physicians would prefer to use their services but cannot because a referral to plaintiffs would breach the Metrocare contract and could result in the loss of the right to participate on the Health Choice provider panel or staff membership at Methodist Hospitals.[4] According to plaintiffs, prior to filing their complaint, they sought, but were denied, the right to participate in Health Choice.
 
 
 4
 Based on their defined relevant market[5], plaintiffs allege that defendants' contractual agreements violated Sec. 1 of the Sherman Act, 15 U.S.C. Sec. 1, because they amounted to a group boycott, an exclusive dealing arrangement, a tying arrangement and price fixing. Plaintiffs also allege a Sec. 2 violation of the Sherman Act, 15 U.S.C. Sec. 2, claiming that the Health Choice defendants possess or conspired to possess monopoly power in the relevant market. Plaintiffs also allege several state law claims.
 
 II.
 
 5
 A district court may award summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court "may order a continuance" to permit the party opposing a summary judgment motion time for further discovery. Fed.R.Civ.P. 56(f).
 
 III.
 
 6
 In the district court's order granting summary judgment to defendants, the court characterized plaintiffs' complaint as arising out of plaintiffs' "inability to become affiliated with the provider panel through membership in [Metrocare] or association with [Health Choice]." The district court incorrectly stated the law and improperly characterized the facts. First, the district court noted that PPOs could restrict the choice of physicians who treated plan beneficiaries to approved health care providers without violating the antitrust laws, provided limitations on panel membership were achieved through objective standards, based on administrative, not economic reasons. The issue in antitrust law, however, is whether the conduct impairs competition.
 
 
 7
 Secondly, the district court held that the record was free of any evidence that the selection process was used in a discriminatory manner. According to the district court, plaintiffs offered no evidence that they were refused membership application forms. Finally, the district court noted that plaintiff Murray's own affidavit failed to support the claim because Murray never sought membership in Metrocare, although he asked to be a designated provider. The court's finding cannot be reconciled with the August 5, 1992 letter sent by plaintiffs' attorney to the presidents of Health Choice, Methodist Health, Metrocare and Memphis Radiological among others. In that letter, counsel stated that Murray and Westmoreland "have sought unsuccessfully to become members of Metrocare...." The letter also states that Metrocare and Health Choice refused to allow the plaintiff radiologists to apply for membership.
 
 
 8
 Based on this letter, we disagree with the district court's characterization of the record evidence as insufficient to support plaintiffs' claims. The district court's narrow reading of the letter and affidavit violated its duty to view the evidence in the light most favorable to plaintiffs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).
 
 
 9
 In addition, the district court's holding that plaintiffs had not demonstrated the existence of a "contract, trust or conspiracy" among defendants restraining trade or the existence of monopoly power was made prematurely given the absence of any relevant market determination. The relevant market must be defined before the defendants' ability to exclude competitors can be assessed. Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 177-78 (1965). Additional development of the facts through discovery should facilitate a relevant market determination and may disclose additional evidence supporting plaintiffs' Section 1 claims as well as plaintiffs' claim that the defendants possessed market power or conspired to do so by increasing Methodist hospital business. Further discovery will also aid a determination of whether Metrocare physicians could refer patients to plaintiffs and whether plaintiffs could join Metrocare. Hence the district court's denial of plaintiffs' Rule 56(f) motion constitutes an abuse of discretion. We therefore VACATE the judgment of the district court and REMAND for further proceedings.
 
 
 
 [1]
 Health Choice, which operates a preferred provider organization (PPO), is a membership corporation, made up of physician members of Metrocare and Methodist Hospitals
 
 
 [2]
 Metrocare negotiates with third-party payors of managed health care programs on behalf of its approximately 600 members, who are doctors with staff membership and clinical privileges at Methodist Hospitals
 
 
 [3]
 Memphis Radiological is a physician-owned corporation which has an exclusive contract to perform diagnostic imaging services for in-patients of Methodist Hospitals
 
 
 [4]
 The district court held plaintiffs failed to show the existence of a dispute in this regard, relying on the affidavit of Pamela Burford, Director of Staff Services for Methodist Hospitals. Burford asserted that the failure of a physician to abide by the inter-referral system was not a ground for termination under the bylaws. Plaintiffs failed to submit affidavits of Metrocare doctors in support of their allegation, but requested further discovery to determine whether members could refer patients to plaintiffs without repercussion
 
 
 [5]
 Plaintiffs assert that the relevant market is the market for out-patient diagnostic imaging services for Memphis area patients of the Metrocare Referring Physicians or, in the alternative, that the relevant market is the market for out-patient diagnostic imaging services for Memphis area out-patients. Because the record is undeveloped as to the availability of substitute services and the geographic area in which the parties compete, we express no opinion as to the proper definition of the relevant market